## HALL vs. GALE.

*Mode of proving damages from breach of covenant of seizin of privilege of raising water to a certain height—Such damages, set up as counter-claim in foreclosure suit, should be determined by a jury.*

1.  Where there was a covenant of seizin in a deed of mill property with the privi
    lege of raising the waters of a certain creek to a specified height, to furnish
    power for the mill, and the grantee could not raise the water to that height
    without liability to damages for flowage, &c. : *Held,* that the amount of dama-
    ges which he was entitled to recover for the breach of the covenant must be
    shown by proving what the property would have been worth at the time of the
    purchase with the right to maintain the wate   at the height mentioned in the
    deed, and how much less it was worth with the right to maintain the water at
    only the height to which the grantee was authorized in fact to maintain it.

2.   Where the circuit court, in an action to foreclose a mortgage on said property for purchase money, in which such a breach of the covenant of seizin was set up as a counter-claim, held that there was no sufficient proof of the breach, and on that ground rendered a judgment against the mortgagor for the full amount of the mortgage debt, this court, on reversing the judgment, does not determine the amount of damages, especially as the evidence is indefinite and uncertain.

3.   The question as to the amount of damages is a proper one for a jury.

APPEAL from the Circuit Court for *Walworth* County.

In 1854, *Gale* contracted to purchase an undivided three eighths of certain mill property belonging to *Hall*, and in 1855 received a deed for the same, and executed back a mortgage upon it to secure payment of part of the purchase money. The deed, after describing the land by metes and bounds, adds: "together with the privilege of raising the waters of Honey Creek, and keeping the same raised at such times as the party of the second part may desire, to within six inches of a certain spike, &c. &c.   *   *   ; which privilege the party of the first part hereby guaranties to the party of the second part, his heirs and assigns forever." It also contains a covenant of seizin and right to sell and convey, in the usual form. This action was brought to foreclose the mortgage.   *Gale* answered, setting up a counter-claim for damages for a breach of the above covenant, in that *Hall* had no right to raise the waters of said creek to the height specified in the deed, nor to a height within twenty inches of the spike there mentioned, and said defendant and his assigns had for that reason been deprived of the profitable use of the mill, &c. &c.

On the trial, defendant introduced evidence to show that one Fowler and one Brewster owned lands on said creek, about two miles above said mill; that soon after he took his deed, Fowler, Brewster and other adjacent land owners complained of the flowage of their land in consequence of the maintenance of the dam, and had never subsequently granted a license for such flowage; that Fowler, in behalf of himself and others, filed a bill in chancery April 5th, 1856, to restrain defendant from

erecting a dam, &c., and an injunction was granted *pendente lite*, which it appears from the printed case was still in force in August, 1858; but it does not appear that any final decree was ever rendered. Defendant also introduced evidence to show that the maintenance of said dam at the height specified in the deed, did in fact flow the lands of said Fowler and Brewster five or six inches. The plaintiff introduced counter-evidence as to this last point. The testimony bearing on this subject was too voluminous to be stated here.

As to the damage resulting from the alleged breach of plaintiff's covenant, the evidence was as follows: The defendant was the owner of the other five-eighths of said property at the time he purchased of the plaintiff, the deed of said five-eighths purporting to convey the right to raise the water as high as the said spike from October 1st to April 1st of each year, and to the same height specified in plaintiff's deed for the remainder of the year. The purchase price of said five-eighths (April, 1853) was $2,812; and the purchase price of the three-eighths sold to him by the plaintiff was $1,687.50. " The dam went out in the winter of 1857," and was not rebuilt; and in the summer of 1858, defendant sold the whole property for $2,070; but previous to that time (the evidence does not show just when) the mill had been burned, and it had not been rebuilt. The defendant, in his own behalf, testified : " The property was used exclusively for a mill-site, and its value consisted in being used for that purpose. I had, between the making of the contract and the making of the deed, made improvements on the mill to the amount of between ten and fifteen hundred dollars. It was necessary to have the water raised to within six inches of the spike to do common business. * * We couldn't do anything after the water was a foot lower than the spike." A witness for defendant testified : " With the water within six inches of the spike they could run one run of stone in the mill. * * The mill could not be run, to do anything, when the water was more than six inches below the

spike. When the water was up to within six inches of the spike they could run but one run of stone. There were two run of stone in the mill. When the water was twelve inches below the spike, they could not do any business at all. * * I shouldn't consider the water-power there worth anything without the privilege of raising the water to within six inches of the spike—that is, with the wheel they used. I think the water-power, or privilege of raising the water, constitutes three-fourths of the value of that property. * * I think the water raised to within twelve inches of the spike would carry one run of stone with a different wheel. I am not a millwright." Defendant, being recalled, testified : " Of the value of that property, the privilege of raising the water to within six inches of the spike constituted three-fourths. * * The difficulty about the right to raise the water damaged me considerably in the sale I made of the property. I sold for a thousand dollars less than I would, had there been no difficulty.' On cross-examination he said : " We could run one run of stone when the water was below six inches from the spike. The way we managed was, we would run the smutter, and smut up a quantity of grain, and then stop that and run one run of stone. When the water was two inches lower than six inches below the spike, we could run one run slowly, grinding three or four bushels an hour for a couple of hours, and then have to shut down." A witness for the plaintiff, who was the grantor to defendant by warranty deed of five-eighths of said mill property with privilege of raising the water as above stated, testified : " When the water was up to the spike, the mill would do a pretty good thumping business with one run ; when it was six inches below, it would not do as well ; and when twelve inches below, not so well as when only six inches. The mill was often running with the water a foot below the spike." On cross-examination he said : " When I ran that mill, I ran it when the water was a foot below the spike, but had to run

slow.   *   *   I consider  $3,000 rather a low price for the mill and fixtures that were burned."

The finding of the circuit court contained the following : " As to said counter-claim, the court does not find that the same is made out by the proofs in the case, or that the defendant has suffered any damage thereby." Judgment was rendered in the plaintiff's favor for the whole amount of his claim ; and the defendant *Gale* appealed.

*Spooner & Harkness*, for appellant, as to the question of damages, argued that the covenant was broken when the deed was delivered, and damages ensued on the occurrence of an actual or constructive eviction. The defendant did not claim an actual eviction, and the proceedings in the case of Fowler against Gale were put in evidence to show that the rightful title was set up and a claim made under it, and then the defendant had a right to yield to the true title, and assume, as against the defendant, the burden of establishing such adverse title. 4 Hill, 643 ; 5 id., 599. The rule of damages is, the relative value of the part lost, compared with the whole. Sedgw. on Dam. (3d ed.), 177 et seq. The proof is, that the value of the privilege of raising the water was three-fourths of the whole value, and that the water power was worthless without it. This is the only evidence on the subject, and would make the damages $1,065.62, three fourths of the purchase money.

*Winsor & Smith, contra :*

The consideration paid by *Gale* was, for three eighths of the lands, water-privileges, mill fixtures, house and appurtenances. What proportion did this privilege of raising the water to within six inches of the spike bear to the whole property ? What was the price of the mill and fixtures, of the house, of the nine acres of land, and of the water privilege such as *Hall had* a right to convey ? None of these questions are answered by the proof. If the consideration money for the whole mill property was $4500, and $3000 was a low price for the mill and fixtures that were burned, this leaves $1500 ; to which add $1250

for improvements put upon the mill by Gale after his purchase and we have $2750 as the cost of the land, house and mill-power. *Gale* in the summer of 1858, sold all that for $2,070 —leaving $680 loss on this property according to his theory; three eighths of which, or $255, would be chargeable to *Hall.* Counsel further contended, upon the evidence, that there was no breach of the covenant.

Dixon, C. J. We disagree with the circuit judge as to the effect of the evidence, and think it clearly shows a breach of the covenant. But the evidence is too indefinite and uncertain for us to settle the amount of damages. Upon this point there is no direct proof. The damages should be shown by proving what the mill property, with the mill as it stood when *Gale* bought, was worth with the privilege of raising the water to the height named in the deed, and how much less it was worth with only the right to raise the water so as not to overflow or damage the lands of Brewster and Fowler. This is really a proper question to be submitted to the consideration of a jury.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.